Leonard L. Fine, J.
This is a motion in which defendant seeks summary judgment or alternative incidental relief.
The brief factual background is of sufficient interest to warrant its recital.
Plaintiff made application for admission to the dental school of the defendant university, and paid the requested deposit of $200 upon receipt of a letter of acceptance from defendant. Subsequently, plaintiff paid an additional sum of $910 upon registration, as requested, for a total of $1,110 representing one semester’s tuition for dental studies. Two days thereafter, and six days prior to the actual commencement of classes, plaintiff notified defendant in writing that ‘ ‘ I hereby resign my place in the Freshman Class at New York University College of Dentistry so that I may attend Kirksville College of Osteopathy and Surgery. My matriculation was to begin in September 1967.” Following defendant’s refusal to refund the sum of $1,110 paid by plaintiff, action was commenced. Defendant’s motion in essence seeks to dismiss plaintiff’s complaint as a matter of law.
The questions before the court are admittedly rare. Except for an unreported case, this court has been unable to find a specific case in point within the State of New York. That factor, coupled with the overabundance of student applicants to a limit of space in colleges and professional schools and the continuing threat of litigation in this area, warrants an appropriate judicial review of the following issues raised:
1. Whether the contents of a university bulletin, and other documents, transmitted to a student applicant, are absolutely binding upon the applicant, actual knowledge of said contents or assent thereto notwithstanding.
2. Whether the “ contract ” embracing the rights of a student applicant and a university is required to be unequivocal and definable.
*939 3. Whether a clause contained in a university bulletin making fees paid by student applicants “ non-refundable ” demands an absolute construction, public policy notwithstanding.
In urging its position, the defendant relies upon three documents which it claims make up the entire contract covering the agreement between the parties. They are:
A. A letter dated December 1, 1966 signed by the Director of Admissions, requesting the sum of $200 in order to ‘ ‘ reserve a place for yourself in the class.”
B. A mimeographed paper with the legend “ Information and Instructions for All Freshman Students,” hereinafter referred to as the Information Sheet.
C. The New York University College of Dentistry Bulletin and Announcement 1967-1968 (55 printed pages), hereinafter referred to as the Bulletin.
Item “A ”, supra, in part states, “ It is understood that this deposit is a guaranteé of good faith on your part and obligates the school to reserve a place for you. This deposit is refundable only for withdrawal in cases of serious illness.” (Emphasis supplied.)
Item “ B ”, supra, is an information sheet setting forth, in addition to other items, the tuition due and date payable.
Item “ C ”, supra, is the Bulletin, salient extracts of which read as follows:
‘1 fees foe 1967-1968
“ The tuition for each academic session is $2,000.00 which may be paid in full at registration or half at that time and the remainder between February 1-8.
“ There is a fee of $10.00 for student activities and health, and a laboratory fee of $100.00 per year. These fees are payable with the first payment of tuition.
í i * * #
“ No tuition or fees are returnable after the date due.” (Pp. 33, 34.) (Emphasis supplied.)
‘ ‘ GENERAL RULES AND REGULATIONS
“ 1. The University’s Rights.
< < S * *
“ Registration does not carry with it the right of refund of tuition or fees in cases of withdrawal or dismissal.” (Emphasis supplied.)
The defendant, in substance, contends that the “ contract ” includes all of the documents set forth in “A ”, “ B ” and *940 “ C ”, supra, and that said ‘ ‘ contract ’ ’ which contains the agreement between the parties expressly bars plaintiff from recovery of any moneys paid; that, as such, plaintiff’s complaint should be dismissed summarily.
On the first issue raised, it appears that the defendant relies on Anthony v. Syracuse Univ. (130 Misc. 249) which it cites as authority for its contention that the terms of a contract are as set forth in the Bulletin, and other documents issued by the defendant university, and as such are absolutely binding upon the plaintiff. This court is somewhat doubtful as to the authority cited by the defendant in the Anthony case (supra), a lower court decision which one year later was reversed by the Appellate Division Fourth Department (which is cited as Anthony v. Syracuse Univ., 224 App. Div. 487) (although upon grounds other than the ones pressed by the defendant). The question raised in Anthony was directed not to matters raised here, but to the right of a university to dismiss an enrolled student after three years of attendance on its right acquired by contract, without offering an “ assigned cause ” as the basis for said dismissal. The main thrust of the Appellate Division opinion in denying plaintiff’s demanded relief for reinstatement, in substance held that since there was a contract setting forth the rights of the plaintiff student and university, the plaintiff had the burden of proving any alleged breach by the university, and in the absense of such proof plaintiff’s action would fail. Such is not the issue here, and as such Anthony is clearly distinguishable.
Van Brink v. Lehman (199 App. Div. 784 [1922]) and William v. Stein (100 Misc. 677 [1917]) are cited as further authority in buttressing defendant’s position. The Van Brink case (supra) addressed itself to the question of whether a contract of enrollment covering an entire school year, with provision for payment in two equal installments, was an entire and indivisible contract, that as such could provide the basis for recovery by the school for the unpaid installment. This issue is neither relevant to the instant issues, nor raised by the parties herein involved. The William case (supra) which served as a basis for the Van Brink decision, is similarly unrelated to the subject matters raised here.
Assuming even that the Anthony, Van Brink and William cases (supra) did in fact support defendant’s contentions (which they do not), they would still have to be reviewed, not under the tranquil circumstances of almost a half century ago, but under circumstances as they exist today — under the frenzied atmosphere of mountains of college and professional *941 school applications being processed and turned a,way in the face of limited, available classroom space.
It is in this framework that the 11 contract ’5 upon which the defendant relies must be properly definable, either by its specific shape, form or content. For a contract is a living thing. It is born through the marriage of minds, each knowing the full extent of his commitment and each knowingly accepting the responsibilities of his charge. It follows, therefore, that if it was the intention of the defendant to burden the plaintiff with the result it now presses, it should have so set it forth in clear and unequivocal language in the letter of December 1, 1966, the Information Sheet, or on any other definable document which the plaintiff could have accepted or rejected prior to September 6, 1967 when he paid the balance of $910. It appears obvious that the plaintiff who paid the sum of $910 on September 6, and then only two days later gave notification of his intention, not to withdraw from the university (as suggested by defendant), but to ££ resign my place in the Freshman Class ’ ’, paid the sum only to insure that he had a place reserved in the Freshman Class. .(Emphasis supplied.) This unfortunate circumstance is understandable when one recognizes that today’s students must of necessity make simultaneous applications to many different schools in the hope that at least one comes to fruition before the deadline established by the accepting school.
Here, to charge the plaintiff with the acceptance of the contents of a Bulletin, 55 pages in length, is a fiction and contrary to today’s practice and usage. Before plaintiff could be specifically bound by the thousands of words of print in the Bulletin, defendant should have given reasonable notice to the plaintiff of the salient sections of its contents and plaintiff would have had to have given assent thereto. (See Klar v. H. & M. Parcel Room, 270 App. Div. 538; Healy v. New York Cent. & Hudson Riv. R. R. Co., 153 App. Div. 516 for similar rationale applicable to quasi-exculpatory contracts.) A mere or casual mailing of the Bulletin to the plaintiff should not satisfy the requirements necessary to make its contents binding in the form of a contractual undertaking or obligation.
Perhaps the desired result could have been accomplished in the following way. Here the defendant university transmitted to the plaintiff a detailed Information Sheet, with information' that covered an entire page. It would appear that following the information specifying the amount of tuition due and the date when payable, it could have added the sentence it now relies upon that appears on page 34 of the Bulletin, to wit, ££ No *942 tuition or fees are returnable after the date due.” Certainly, a term as vital to this plaintiff student and to other student applicants as the one quoted above should have been inserted in the Information Sheet supplied by defendant and set forth in a prominent manner. And if it appeared that sufficient space already limited on the sheet would have required that some other items be eliminated, perhaps the information concerning ‘ ‘ padlocks ” which students were requested to have in connection with their laboratory lockers, and that ‘1 these may be purchased at the Campus Bookstore,” might have yielded to something perhaps less commercial but more significant.
The defendant relies further upon the language contained on page 36 of the Bulletin, 1 ‘ Registration does not carry with it the right of refund of tuition or fees in cases of withdrawal or dismissal.” Here, the defendant stresses the word “withdrawal ” as being one of its prime movers in support of its position. Moreover, defendant urges, plaintiff did in fact “ withdraw ” and as such should be bound by the consequences of his act as set forth in the Bulletin. Assuming the merit of defendant’s position, the term “withdrawal” would have to withstand an exacting test if it in fact served as one of the catalysts for the retention of the moneys paid by the plaintiff. .In such event, the term 1 ‘ withdrawal ’ ’ cannot be viewed in a vacuum. It, by definition, relates to an act which must of necessity be immersed in something or someplace. There can be no .withdrawal from something that is yet to occur. Simply stated, .there can be no withdrawal without arrival. In its application to the instant matter “ withdrawal ” presupposed a withdrawal from class after arrival in class. Such arrival could not take .place until September 14, 1967 (the commencement of classes) —■ six days after plaintiff gave notice to the defendant of his intention not to commence classes. Even the language of the Bulletin on page 37 under the caption ‘ ‘ Withdrawal ’ ’ makes it quite clear that “ withdrawal ” presumes that there would be first an attendance. The specific language contained on page 37 .of the Bulletin follows: “ Withdrawal. Honorable dismissal is granted to any student who is in good standing and not subject ;to disciplinary action on the written request of the student or his parents or guardian — ”. If there was in fact a withdrawal in the instant case, would there first not have to be a dismissal, honorable or otherwise, as set forth in the Bulletin? Such an exercise merely enlarges the weakness of defendant’s position.
The defendant argues further that 1 ‘ the recent case of Rochman v. NYU in this court is in all material respects on a par with the instant case and is to be regarded, if not as a *943 controlling precedent here, at least as stare decisis. After trial, the court entered judgment for the defendant with costs.” It is difficult to determine the rationale that pervaded the learned court’s decision in the Rochman case, since the decision stated merely that “ Judgment is awarded in favor of the defendant, dismissing plaintiff’s complaint.” In the absence of any amplification showing the basis for the court’s decision, it would be improvident for this court to employ speculation in either agreement or disagreement with its result.
Assuming arguendo, however, that there did exist in fact a clearly definable contract, the result would still remain unaffected. For here the plaintiff does not deny the existence of a contract — only the burdensome effect of its terms does it place in issue. The plaintiff contends that notwithstanding the existence of a contract and the possible breach of it by the plaintiff, to permit defendant to retain the entire consideration paid would, in effect, constitute a penalty and, as such, violate public policy. To this, defendant assumes shelter behind the protective language of the Bulletin which in essence sets forth that moneys paid by the plaintiff are not “ returnable.” In its application of an absolute construction, the defendant maintains that neither the rules related to 1 ‘ liquidated damages” or “ penalties ” herein apply. As such, defendant places no significance upon the amount involved, but rather the words invoked. Would the same rationale hold true if the amount paid and sought to be recovered by the plaintiff student was $2,110 instead of $1,110? Or perhaps $4,110? Or perhaps $8,110? The principle applies not to the amount involved, but to the reasonableness of its impact upon the accepted rule of damages and its effect upon the public policy. In the same context, although there is no specific reference to ‘ ‘ liquidated damages ” set forth as such in defendant’s Bulletin, the sum paid by the plaintiff, were it to be retained by the defendant, would have the same effect as a clause calling for ‘ ‘ liquidated damages ”. In that connection, the court must examine the reasonableness of the ‘ ‘ liquidated sum ” to be so retained by the defendant. As set forth in New York Jurisprudence (vol. .14, Damages, '§ 162, p. 16) “ if the sum agreed upon or stipulated is so large as to be out of all proportion to the probable or presumptive loss, and is therefore not a fair measure of the damages actually sustained, it will generally be regarded as a penalty, despite the fact that the parties have chosen to call it ‘ liquidated damages ’ and the recovery would be limited to the actual damages sustained.” (See, also, 14 N. Y. Jur., Damages, § 157.)
*944 Perhaps an analogy can be drawn in the case of one who reserves a catering establishment for a specific night and pays half the charge (which might be several thousands of dollars) prior to the appointed date. Assume that the contract clearly states that the sum paid would not be returnable (as in the instant proceeding). ¡Should the contracting party breach his agreement by canceling the engagement, would not an important element of the caterer’s damage be the question of whether he recontracted the evening with another party? Could he take refuge behind a ‘ ‘ non-returnable clause ’ ’ in the contract, thereby refusing to return payment to the plaintiff of sums paid, irrespective of the actual damages he sustained? Is not the same principle applicable here? If the defendant university did in fact receive tuition for the same space from another student applicant, should that not serve toward a diminution of its damages? The rule of damages applies equally to universities, albeit they serve enrichment to the mind, as well as others who may merely cater abundance to the body. This rule, the nonprofit nature of some educational institutions notwithstanding, operates by the application of a single standard and not a double one.
To permit the defendant to prevail would encourage other such institutions to demand payment of tuition and fees under such circumstances as would place an unfair burden upon student applicants who, as stated earlier, must make application to many schools at one and the same time with accompanying fees. Defendant’s argument that there must be a “law day, beyond which there is no turning back ’ ’ suggests a medieval doctrine of penalty that is incompatible with, and violative of our present day climate of justice.
To deprive the plaintiff student of his right to recovery would in effect confer to the defendant the power to construe the contract it alone authored and to make its harsh construction forever binding upon the plaintiff. (See Industrial & Gen. Trust v. Tod, 180 N. Y. 215.) For here the defendant claims a right created by a statement contained in its Bulletin — casually printed and devoid of prominence — without regard as to whether the enforcement of that right was predicated upon the application of equitable principles — or, more important, the rule of damages. The mere recital by the defendant that “no tuition or fees are returnable ’ ’ must be examined in the atmosphere of a “ good faith ” construction. Addressing themselves to an analogous area, Professors Simpson and Duesenberg, former professors of law at defendant’s .School of Law, state in their three-volume treatise on contracts (N. Y. Contracts Law, *945 vol. 6, § 827, p. 515) “ A similar rule is applied as to a provision in a contract attempting to confer on one of the parties the power to construe the contract and making his construction binding on the other party, and in case of such an attempt the court will read into the contract the qualification or requirement that the party act in good faith.” (Emphasis supplied.) Although not specifically in point, does not the same reasoning apply here? Does not the defendant, in attempting to take refuge behind its £ £ hard linotypic line, ’ ’ demonstrate the absence of that requirement of good faith, as suggested by Professors Simpson and Duesenberg? Should not a quasi-public institution whose very existence is dependent upon quasi-public support be not responsible to that same public by the application of the highest of standards in its dealings with that very public? To-day’s institutions should not be afforded such lofty positions of advantage in their dealings with young and anxious student applicants as to make them the recipients of an enrichment which the sound demands of justice should discourage and the just application of law should prevent. It is for the above-stated reasons that plaintiff’s cause should prevail.
The defendant, having elected to rely solely upon the written language contained in the documents cited and submitted in support of its motion for summary judgment, must be presumed to have no defense with respect to specific damages it might have asserted but failed so to do. As such, and by reason of its motion, the defendant submits the issues to this court solely as questions of law to be determined by the court.
Accordingly, judgment is awarded to the plaintiff in the sum of $910.
With respect to the initial deposit of $200, the return of which plaintiff also seeks, the court finds that said sum represented the consideration for the space reserved and held in favor of the plaintiff, which space he voluntarily and knowingly vacated under the specific terms brought to his attention for which he gave assent, and that said sum is equal to the damages suffered by the defendant. (This decision makes academic that branch of the motion which seeks to vacate the notice of examination before trial.)
In accordance with this decision, let judgment be entered in favor of the plaintiff in the sum of $910 with appropriate interest. The defendant has leave to move for a reconsideration of this decision if it can set forth a proper showing to this court that it suffered specific damages in excess of $200. In the absence of such procedure, let this judgment stand.