DR. ALBERT F. WOODS, President and Executive Head of the University of Maryland, et al. *vs.* VIVIAN B. SIMPSON.

*University—Control of Students—Discretion of Officer— Mandamus.*

Upon appeal from a decision upon an application for a mandamus, the court is required to consider and weigh the whole record and, exercising its own judgment upon the law and facts, to determine whether the decision was correct. p. 549

The maintenance of discipline, and the upkeep of the necessary tone and standards of behavior in a body of students in a

college, is a task committed to the faculty and officers, and not to the courts, and only in extraordinary cases should the courts intervene.                                                    p. 551

It is only when the action with respect to a student has been, not an honest exercise of discretion looking to the proper ends, but beyond the limits of such discretion, or arising from some motive extraneous to the purposes committed to that discretion, that the courts may be called upon for relief.          p. 551

The honest exercise of discretion by an officer of an educational institution as to the continuance of an individual as a member of the student body cannot be controlled by mandamus.
                                                                    p. 552

In the relation of university officials and their students, there is no place for condonation or waiver, the failure to take action on single incidents not precluding their consideration in connection with subsequent incidents.          p. 552

The record, including a verbatim report of all colloquies and remarks at the trial, and a reproduction of all exhibits at length, *held* to involve such a violation of the fifth rule of the Court of Appeals as to justify the imposition on the appellants, although the judgment was reversed, of one-third of the cost of the record.
                                                                    pp. 552, 553

*Decided December 4th, 1924.*

Appeal from the Baltimore City Court (HEUISLER, J.).

Petition for mandamus by Vivian B. Simpson, by Joseph B. Simpson, her father and next friend, against Dr. Albert F. Woods, president and executive head of the University of Maryland, and others. From an order granting the writ, defendants appeal. Reversed.

The cause was argued before URNER, OFFUTT, DIGGES, BOND, and PARKE, JJ.

*Edward H. Burke, Assistant Attorney General,* and *Herbert Levy, Assistant Attorney General,* with whom was

*Thomas H. Robinson, Attorney General,* on the brief, for the appellants.

*William F. Broening and C. Morris Harrison,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

This appeal is from an order granting the petition of a student of the University of Maryland for the writ of mandamus to compel the officers and regents of the University to permit her to continue her course. She had been refused admittance to the third year of work after she had finished the first two years. The case was heard before the court below without a jury. There are eighteen exceptions noted in the record, but this Court is required, upon appeal from a decision of the court in such a case, to consider and weigh the whole record, and, exercising its own judgment upon the law and facts, determine whether the decision of the trial court was correct; and after such a consideration we have found it unnecessary to rule upon the exceptions. *Pope* v. *Whitridge,* 110 Md. 468-475; *Manger* v. *Board of Examiners,* 90 Md. 659-673; *Creager* v. *Hooper,* 83 Md. 490-502.

It appears from the testimony taken that the petitioner was a young woman not readily submissive to rules and regulations, and that during her two years at the University she was to a considerable extent in conflict with the authorities who had her in charge. And at the conclusion of her second scholastic year, in June, 1923, when her father applied for a reservation of a room for her for the third year, the president of the institution replied that experience with the daughter had not been satisfactory and that it was considered for her best interest, as well as for that of the students and the University, that she should not live in a dormitory. The letter concluded:

"I think it is only fair to say to you in this connection that an investigation in progress may reveal facts which may lead us to ask you to arrange for your daughter's transfer to some other institution. She is

apparently not in sympathy with the management of the institution or with the majority of the students in their system of student government. I am calling this to your attention now so that you may have time to decide where she is to go in case we decide not to re-enter her here."

A letter of a week later, replying to a second effort of the father to secure a dormitory room, advised him definitely that a room would not be available for the daughter, and that if she was readmitted it would be as a day student.

The investigation, referred to in the letter quoted, was an effort to trace the source of a report professing to have been furnished by girl students to a Washington newspaper and there published, that men officials of the University were making objectionable suggestions to girl students and otherwise exhibiting a wrong moral attitude toward them. Instances were described in the report. It depicted a dangerous condition, and was a serious attack on the institution, obviously demanding an investigation and correction of the condition if it existed. It is conceded by both sides in this litigation that the report was false, but investigation was none the less necessary at the time. A students' mass meeting passed a resolution of confidence in the administration, denying the report, and all voted in favor of the resolution except the petitioner and one other. All the girl students were asked if they knew anything of the charges, and when the petitioner was asked by the dean of women, she turned and left without answering. Some time in July the petitioner was invited to a conference by the president, and told by him that he had reason to believe that she signed some of the charges given to the newspaper, and was asked whether or not she had done so. The president said he wanted an answer to aid him and that unless she answered she would not be registered for the following term. She then asked him if the charges did not appear in the newspaper, and the president said he was not asking the newspaper, he was asking her. She replied that she could not answer that question.

Again, in September, 1923, she saw the President and was told by him that unless she complied with his demands made in July she would not be registered. She was thereupon transferred to George Washington University, and brought this proceeding in Baltimore.

The maintenance of discipline, the upkeep of the necessary tone and standards of behavior in a body of students in a college, is, of course, a task committed to its faculty and officers, not to the courts. It is a task which demands special experience and is often one of much delicacy, especially in dealing with girl students; and the officers must, of necessity, be left untrammeled in handling the problems which arise as their judgment and discretion may dictate, looking to the ends to be accomplished. Only in extraordinary situations can a court of law ever be called upon to step in between students and the officers in charge of them. When it is made clear that an action with respect to a student has been, not an honest exercise of discretion looking to the proper ends, but beyond the limits of that discretion, or arising from some motive extraneous to the purposes committed to that discretion, the courts may be called upon for relief. In such case, the officials have, as it is sometimes stated, acted arbitrarily, or abused their discretion; and the courts may be required to remedy that. In *Manger* v. *Board of Examiners,* 90 Md. 659, 671, Chief Judge McSherry said: "The exercise of a discretion, though erroneously, if not corruptly exercised, cannot be reviewed in a petition for a *mandamus;* but an officer clothed with a power may be compelled by *mandamus* to exercise that power, though his honest discretion in the exercise of it cannot be controlled." And this is the general rule applied to controversies over matters of discipline and order in educational institutions. *People ex rel. O'Sullivan* v. *New York Law School,* 68 Hun. 118; 22 N. Y. Supp. 663; *High on Extraordinary Legal Remedies,* 26; 20 *Yale Law Journal,* 341. In the case of *People ex rel. O'Sullivan* v. *New York Law School, supra,* the court said: "Any other rule would be subversive of all discipline in the schools and

of the educational interests of the State. To hold that dissatisfied students in the colleges and schools of this State can review the discretion of faculties in cases where the facts justify the exercise of discretion would be most unwise."

In the case now before us, the petitioner, and to some extent the court below in its opinion, have viewed the refusal to let the petitioner continue her course as a penalty attached to the one isolated act of her declining to answer as to her authorship of the damaging aspersions on the life at the University. And it is suggested that any fault on her part in her previous difficulties had been condoned. But, we have not been able to take this view. The relation of university officials and their students is one in which condonation or waiver has no place. There is nothing in that relation, as there often is in marriage or in business, which requires that single incidents justifying breaches be at once either made the basis of breach or be forever after disregarded. On the contrary, college officials are required to act upon their ultimate judgment of the student derived from experience, the longer the better, and the greater the number of incidents covered the better. We do not mean to pass judgment on the sufficiency of this student's declining to answer the question of the president and the dean as a separate ground for refusing her admittance to her third year; it would not be necessary to do so even if it were within our province, for we conclude from the testimony that during the student's previous two years also she had given the officials some reason to consider the effect of her actions and her attitude on the University and its proper upkeep, and that, on the whole, experience with her did fairly raise a question whether she could be continued in this student body without results which ought to be avoided; and the decision of that question was within the discretion of the officials, and is, in our opinion, not to be interfered with by the courts. The petition for the writ of mandamus should, therefore, have been dismissed.

The record in this case, containing as it does a verbatim report of all that took place at the trial, including all collo-

quies and remarks, and a reproduction of all exhibits at length, constitutes such a violation of the fifth rule of the Court of Appeals that we have concluded that the appellants should pay one-third of the cost of it.

> *Order reversed and petition dismissed, with costs to the appellant except as to one-third of the cost of the record.*