STATE EX REL. INGERSOLL, APPELLANT, *v.* CLAPP ET AL., RESPONDENTS.

(No. 6,239.)

(Submitted November 23, 1927.    Decided January 3, 1928.)

[263 Pac. 433.]

*Mandamus—Colleges and Universities—Suspension of Student —Formal Hearing not Required—Pleadings—Amendments— Discretion—Appeal—Presumption.*

Mandamus—Answer—Amendment—Discretion.
1. The district court may, in its discretion, permit defendants in a proceeding in mandamus to amend their answer by striking out their allegation that it was made on information and belief and inserting in lieu thereof a positive one, and its action is not subject to review unless it appears that its discretion was abused to the prejudice of plaintiff.

Pleadings—Coparties—Verification by One Sufficient.
2. Under section 9163, Revised Codes 1921, the verification to an answer in an action against several defendants may be made by one of them in behalf of all.

Appeal—Action Tried by Court Without Jury—Erroneous Admission of Testimony—Presumption.
3. In an action tried by the court without a jury, it will be presumed that any testimony erroneously admitted was disregarded by it in making its findings.

---

1.  See 2 Cal. Jur. 900; 21 Cal. Jur. 181; 21 R. C. L. 572.
2.  Verification of pleading by one coparty for all, see note in 7 A. L. R. 30.  See, also, 21 Cal. Jur. 218.
3.  See 2 R. C. L. 222.

Colleges and Universities—Charges Against Student—Formal Hearing not Required.

4. Where a young woman student at the state university was called before the deans' council, informed of charges against her and given an opportunity to deny them or make a statement concerning them, refused to do so and was suspended by the president, she was accorded a sufficient hearing, in such a case it not being necessary to hold a hearing with substantially the strictness and formality of a proceeding before a court.

Same—Suspenson of Student—Courts will not Interfere, When Adopted by the Governing Body of the State University.

5. In the absence of statutory provisions or regulations the method to be pursued in determining the necessity for the suspension of a student at the state university rests with its president, and the courts will not interfere with his action in the absence of a clear showing that he has acted arbitrarily or has abused the authority vested in him.

Same—Suspension of Student Held not Arbitrary.

6. The enforcement of the disciplinary rules of the state university is committed to the officials thereof, and unless they are palpably unreasonable or in enforcing them they act arbitrarily, courts will not interfere, and under that rule, *held* that where a a young married woman student, living with her husband, also a student, near the university, was shown to have permitted the use of intoxicating liquor in her home by students, although she herself did not use it, while her husband did, her suspension deemed necessary for the welfare of the student body cannot be said to have been so arbitrary as to necessitate an order for her reinstatement. (MR. JUSTICE GALEN dissenting.)

Appeal—Findings—When Conclusive.

7. A finding of the court in an action tried by it alone will not be disturbed on appeal unless the evidence clearly preponderates against it, it having had the superior advantage of having seen the witnesses and observing their demeanor while testifying.

[1]   Appeal and Error, 4 C. J., sec. 2757, p. 799, n. 34.   Mandamus, 38 C. J., sec. 634, p. 905, n. 56.

[2]   Mandamus, 38 C. J., sec. 602, p. 885, n. 67.   Pleading, 31 Cyc., p. 538, n. 3.

[3]   Appeal and Error, 4 C. J., sec. 2726, p. 776, n. 57.

[4]   Colleges and Universities, 11 C. J., sec. 31, p. 998, n. 61.

[5]   Colleges and Universities, 11 C. J., sec. 31, p. 997, n. 46, 47, p. 998, n. 59, 61.

[6]   Colleges and Universities, 11 C. J., sec. 31, p. 997, n. 46, 47, p. 998, n. 60.

[7]   Appeal and Error, 4 C. J., sec. 2853, p. 880, n. 97.

*Appeal from District Court, Lewis and Clark County; Wm. L. Ford, presiding Judge.*

6.   See 27 R. C. L. 141.
7.   See 2 Cal. Jur. 918; 2 R. C. L. 202.

MANDAMUS proceeding by the State, on the relation of Janet T. Ingersoll, against Charles H. Clapp, as president of the State University, and others, comprising the State Board of Education. Judgment for defendants and plaintiff appeals. Affirmed.

*Mr. Lester H. Loble* and *Mr. Hugh R. Adair,* for Appellant, submitted an original and a reply brief and argued the cause orally.

A student wrongfully dismissed from the State University is entitled to a writ of mandamus to compel her reinstatement and to restore to her the rights and privileges of which she has been deprived. (*Commonwealth* v. *McCauley,* 3 Pa. Co. Ct. Rep. 77; *State* v. *Osborne,* 32 Mo. App. 536; *Anthony* v. *Syracuse University,* 130 Misc. Rep. 249, 223 N. Y. Supp. 796; *Gleason* v. *State University,* 104 Minn. 359, 116 N. W. 650; *Jackson* v. *State,* 57 Neb. 183, 42 L. R. A. 792, 77 N. W. 662; *Miller* v. *Dailey,* 136 Cal. 212, 68 Pac. 1029; *Baltimore University* v. *Colton,* 98 Md. 623, 57 Atl. 14; *Hughes* v. *Outlaw,* 197 Ala. 452, Ann. Cas. 1918C, 872, 73 South. 16; *Stephens* v. *Humphrey,* 145 Ark. 172, 224 S. W. 442; *Wilson* v. *Stanford,* 133 Ga. 483, 66 S. E. 258; *Cook* v. *School District,* 266 Ill. 164, 107 N. E. 327.)

The authorities are agreed that the relationship between a student and a university is a contractual one. (27 R. C. L. 144; 11 C. J. 984, 997; *Goldstein* v. *New York University,* 76 App. Div. 80; 78 N. Y. Supp. 739; *Anthony* v. *Syracuse University,* 130 Misc. Rep. 249, 223 N. Y. Supp. 796.)

It was the duty of respondents to grant appellant a hearing and their refusal to grant her petition for such hearing entitles her to reinstatement in the university. In 11 Corpus Juris, 988, it is said: "A college cannot dismiss a student except on a hearing in accordance with a lawful form of procedure. giving him notice of the charge and an opportunity to hear the testimony against him, to question witnesses, and to

rebut the evidence. A student wrongfully dismissed is entitled to reinstatement, since an action for breach of contract would not afford adequate relief." (*Anthony* v. *Syracuse University*, supra; *Commonwealth* v. *McCauley*, 3 Pa. Co. Ct. Rep. 77; *Shaw* v. *Small*, 124 Me. 36, 125 Atl. 496; *Jones* v. *City of Fitchburg*, 211 Mass. 66, 97 N. E. 612; *State* v. *Seehorn*, 283 Mo. 508, 223 S. W. 664; *State* v. *Milhollan*, 50 N. D. 184, 195 N. W. 292; *City and County of Denver* v. *State Inv. Co.*, 49 Colo. 244, 33 L. R. A. 395, 112 Pac. 789; *Hosmer* v. *State*, 24 Okl. Cr. 312, 218 Pac. 164; *United States* v. *Uhl*, 266 Fed. 929; *City of Dallas* v. *Saenger* (Tex. Civ. App.), 255 S. W. 652.)

Where discretion is conferred upon a board or upon an official or upon a court it must really be exercised as such; the official, board or court cannot act oppressively or arbitrarily under pretense of exercising discretion. Such arbitrary or oppressive action under color of exercising discretion is called abuse of discretion. (*Cook* v. *School District*, 266 Ill. 164, 107 N. E. 327; *Hughes* v. *Outlaw*, 197 Ala. 452, Ann. Cas. 1918C, 872, 73 South. 16; *Perkins* v. *Independent School Dist.*, 56 Iowa, 476, 9 N. W. 356; *State* v. *Ferguson*, 95 Neb. 63, 50 L. R. A. (n. s.) 266, 144 N. W. 1039; *Holman* v. *School Trustees of Avon*, 77 Mich. 605, 6 L. R. A. 534, 43 N. W. 996; *State* v. *Penter*, 96 Mo. App. 416, 70 S. W. 375; *Hardwick* v. *Board of School Trustees*, 55 Cal. App. 696, 205 Pac. 49; *State* v. *Ross*, 76 Okl. 11, 183 Pac. 918; *Wilson* v. *Michigan State Board of Registration in Medicine*, 228 Mich. 25, 199 N. W. 643; *Jackson* v. *State*, 57 Neb. 183, 42 L. R. A. 792, 77 N. W. 662; *Stephens* v. *Humphrey*, 145 Ark. 172, 224 S. W. 442; *Watt* v. *Stanfield*, 36 Idaho, 366, 210 Pac. 998; *In re Welisch*, 18 Ariz. 517, 163 Pac. 264; *School Dist. No. 2 of Silver Bow County* v. *Richards*, 62 Mont. 141, 205 Pac. 206.)

An abuse of discretion is said to occur when officials exceed the bounds of reason, all the circumstances before them considered. Arbitrary or capricious action is unreasonable action—action without consideration of the facts or action in

204    State ex rel. Ingersoll v. Clapp et al.    [Dec. T. '27

[81 Mont. 200.]

disregard of the facts and circumstances of the case—action determined upon without due investigation. (*Valentine* v. *Independent School District*, 187 Iowa, 555, 6 A. L. R. 1525, 174 N. W. 334; *People* v. *Gilchrist*, 114 Misc. Rep. 651, 188 N. Y. Supp. 61.)

*Mr. L. A. Foot*, Attorney General, and *Messrs. I. W. Choate* and *A. Angstman*, Assistant Attorneys General, for Respondents, submitted a brief; Mr. Choate argued the cause orally.

Authority of administrative officials of university to enforce discipline: It is plain, both from the statutes of Montana and from the authorities that will be hereafter cited, that attendance at the University of Montana is not a right but a privilege, and a privilege that may be enjoyed only subject to the restrictions imposed by law. Therefore, as a matter of statute and independent of decisions from other states, the law in Montana is that subject to the general supervision and control of the state board of education and of the chancellor, the president of the State University at Missoula, is the executive head of that institution and is vested with the immediate control of students in attendance thereat. It is further clear that the university is open to students only "under such regulations and restrictions as the State Board of Education may deem proper."

It is well settled that in the exercise of the powers given by general language similar to the above, the administrative authorities of an educational institution may make and enforce any reasonable regulation for the government of students in attendance at a college or university. (*John B. Stetson University* v. *Hunt*, 88 Fla. 510, 102 South. 637; *Gott* v. *Berea College*, 156 Ky. 376, 51 L. R. A. (n. s.) 17, 161 S. W. 204; *State* v. *White*, 82 Ind. 278, 42 Am. Rep. 496; *Kentucky Military Institute* v. *Bramblet*, 158 Ky. 205, 164 S. W. 808; *Tanton* v. *McKenney*, 226 Mich. 245, 33 A. L. R. 1175, 197 N. W. 510.)

The following rules are prescribed in the student handbook, which rules were made by the faculty with the approval of the president and chancellor: ''For manifest unfitness for membership in the university, a student may be suspended or expelled.'' ''All university parties, formal or informal, shall close not later than 12 P. M. All parties where women are present shall be chaperoned.''

Of course, it was not necessary that a specific rule should have been promulgated covering every possible act which constituted a violation of either the spirit or the letter of the above rules. Moreover, there are certain obligations on the part of the students which may be enforced without the adoption of any formal rule. (See 24 R. C. L. 574; *State* v. *School Board,* 135 Wis. 619, 116 N. W. 232; *Wooster* v. *Sunderland,* 27 Cal. App. 51, 148 Pac. 959.)

Interference by courts with enforcement of rules for student discipline: There seems to be practical unanimity among the authorities on this matter. The general rule will be found stated in 11 C. J., page 997, section 31, as follows: ''Within reasonable limits, the power of the trustees, regents, or other governing officers as to these matters is plenary and complete; and unless such rules and regulations are found to be unauthorized, against common right, or palpably unreasonable, the courts will not annul or revise them. Neither will the courts afford relief in case of the enforcement of such rules, unless those whose duty it is to enforce them act arbitrarily and for fraudulent purposes. The wisdom of the policy manifested by the rules and regulations is a matter within the discretion of the college authorities and beyond interference by the courts.'' (See, also, 24 R. C. L., sec. 24; *John B. Stetson University* v. *Hunt, Tanton* v. *McKenney, Kentucky Military Institute* v. *Bramblet,* above.) From the foregoing authorities, which might be multiplied, the rule is plainly apparent that the courts possess in this proceeding no jurisdiction whatever to control the discretion of the president and deans' council of the State University in suspending the plaintiff from that

institution, nor to control the discretion of the state board
of education in upholding the exercise of said discretion by
the administrative officials of the school. The only function
that a court can properly exercise in this proceeding is to
inquire whether, in acting as they did, the administrative
officials and the state board of education acted arbitrarily,
fraudulently or in abuse of discretion.

Nature of hearing necessary: It is, of course, our contention
that the evidence in this case is such as to practically foreclose
any discussion of this question and to obviate the necessity
for any consideration of it by this court. We claim a suffi-
cient hearing was accorded relatrix. But let us now suppose
that the plaintiff had been given no hearing, or that at a
hearing given, the plaintiff was not "confronted with wit-
nesses." What is the rule of law applicable? The decisions
are not entirely uniform on this question, but the majority
rule is that no formal hearing is necessary as a condition prece-
dent to the expulsion or suspension of a student from a college or
university. (*Vermillion* v. *State*, 78 Neb. 107, 15 Ann. Cas. 401,
110 N. W. 736; *Board of Education* v. *Purse*, 191 Ga. 422, 65
Am. St. Rep. 312, 41 L. R. A. 595, 28 S. E. 896; *Gleason* v.
*State University*, 104 Minn. 359, 116 N. W. 650; *Common-
wealth* v. *McCauley*, 3 Pa. Co. Ct. Rep. 77; *Smith* v. *Board of
Education*, 182 Ill. App. 342; *Koblitz* v. *Western Reserve Uni-
versity*, 21 Ohio C. C. 144; *Goldstein* v. *New York University*,
76 App. Div. 80, 78 N. Y. Supp. 739; *Board of Education* v.
*Helston*, 32 Ill. App. 300; *State* v. *Hamilton*, 42 Mo. App.
24.)

MR. JUSTICE STARK delivered the opinion of the court.

The State University is an educational institution located at
Missoula, which is owned, controlled, supported and maintained
at public expense. Defendant Charles H. Clapp is president
of that institution, Harriet R. Sedman and Richard H. Jesse
are members of its faculty, and, respectively, dean of women

and dean of men.  The other defendants named are members of the state board of education.

By the provisions of sections 858 and 862, Revised Codes of 1921, defendant Clapp, as president, has the immediate direction, management and control of the State University, subject to the general supervision, direction and control of the state board of education.  The president and the two deans above mentioned make up what is designated the deans' conference, which, it appears, is advisory to the president in disciplinary matters.

In connection with the management and control of the university, and for the guidance of students there in attendance, certain rules have been heretofore promulgated, amongst them being: "The university requires all its students to conform to the usual standards of society and law-abiding citizenship.  *  *  *  No student is permitted to continue his connection with the university who shows persistent unwillingness or inability to comply with these requirements.  *  *  *  For persistent delinquency, flagrant misconduct, or manifest unfitness for membership in the university, a student may be suspended or expelled."

Being duly qualified therefor, in the fall of 1924 the plaintiff, a married woman of twenty years of age, was duly enrolled as a student at the university in the department of science, literature and art, and remained in attendance at the institution, with the exception of a portion of the year 1926, down to the nineteenth day of January, 1927, on which last-mentioned date the defendant Clapp, acting in concert with the two deans, suspended her, struck her name from the roll of students, and refused to recognize her as a student or to permit her to be instructed as such in said university, under the circumstances and for the reasons hereafter set forth.

The plaintiff thereafter requested the president to reinstate her as a student in the institution, or to grant her a hearing upon such request, both of which were denied.  Subsequently, on March 31, 1927, she petitioned the state board of educa-

tion to reinstate her as a student in such university, or that she be granted a hearing at which she would be confronted with the evidence upon which her suspension was based, and at which an opportunity would be given to defend against the charges which had been made against her, which petition was denied by an order of said board made on April 5, 1927.

On April 18, 1927, plaintiff instituted this proceeding for a writ of mandate to compel the defendants to reinstate her as a student in said university, claiming that her suspension therefrom was unwarranted, and was the result of arbitrary action on the part of the defendant Clapp, and without giving her an opportunity to meet and face the witnesses against her or to cross-examine the same or offer any defense thereto. Upon the filing of her complaint an alternative writ of mandate was issued, commanding the defendants to reinstate the plaintiff as such student, or that they show cause at the time therein mentioned why they had not done so.

The defendants made a joint answer, in which it was admitted that the plaintiff had been suspended from said university, but denied that such suspension was made arbitrarily or without giving plaintiff a hearing on the charges which had been preferred against her, and affirmatively alleged that, during the period of time that the plaintiff was in attendance at the university, the dwelling-house occupied by her and her husband (who was also a student at the university) was a general rendezvous for students at the university; that student parties were frequently held at said residence unchaperoned by any person appointed by the dean of women of said university; that students at the university frequented said dwelling house and parties held thereat, and either brought with them, or were served with, intoxicating liquor while there, and that the use of intoxicating liquor by students in attendance at the university or serving the same to students in attendance thereat, whether in private homes or elsewhere, has been regarded as not in conformity with the usual standards of society at the university, or with the duties of law-abiding

citizens; that on the thirteenth day of January, 1927, the plaintiff was interrogated by the dean of women at said university regarding conditions existing at her home, particularly with reference to the use or serving of intoxicating liquors thereat, and was then and there informed that it was charged that students in attendance at the university drank or were served liquor at the home of the plaintiff and her husband; that subsequent thereto the plaintiff and her husband were called before the deans' council of the university, and interrogated regarding the serving of liquor at their home and regarding the conduct of student parties at said home, in violation of the rules of the university; and that, upon admissions made by plaintiff and her husband, and upon information furnished to the deans' council from other sources, it was the unanimous judgment of the deans' council that the general good and welfare of the university would be subserved by the suspension of the plaintiff and her husband from said university, and that the plaintiff and her husband were thereupon suspended from the university by the said Charles H. Clapp, as president thereof.

By plaintiff's reply thereto, issue was raised upon the affirmative allegations of the answer. The matter was brought on for trial before the court without a jury. The court made and filed findings of fact and conclusions of law, denied the application for the writ, and ordered the proceeding dismissed. Judgment was duly rendered and entered in accordance with the court's directions, from which the plaintiff has appealed.

Counsel for plaintiff have made numerous specifications of [1] error, the first seven of which raise some questions of practice which require brief notice. It is contended that the court erred in permitting the defendants to amend their answer by striking out portions thereof. This answer, as originally filed, was made on information and belief, but on application it was amended so as to make its allegations positive. The court had authority within its discretion to allow such amendments to be made, and its action in doing so is not sub-

ject to review, unless it appears that this discretion was abused to the prejudice of the adverse party (*Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601), and there is nothing in this record indicating that plaintiff was in any way prejudiced by the court's action.

Again it is contended that the verification to the answer [2] was not sufficient. This verification was made by one of the defendants for and on behalf of all, and was sufficient. (Sec. 9163, Rev. Codes 1921.) The individuals named are the parties defendant. The deans' council and the state board of education, as entities, are not made parties defendant to the action.

It is further contended by counsel that the court erred in denying their motion to strike out certain portions of defendants' answer; that the answer should have been stricken from the files on their motion; that their motion for a peremptory writ should have been sustained; and that it was error to overrule their objection to the introduction of any evidence in support of the allegations of the answer. In the view which we take of the case, and which will be hereafter developed, the defendants' answer stated facts sufficient to constitute a defense to the plaintiff's application for a writ of mandate, and the portions thereof covered by counsel's motion to strike were material, and were properly permitted to remain therein, and it was not error for the court to overrule the motion for the peremptory writ or the objection to the introduction of testimony under the allegations of the answer.

Several specifications of error are directed to the rulings of the court in admitting evidence asserted by counsel to be [3] incompetent or irrelevant. The cause having been tried to the court without a jury, we will assume that such testimony, if any, was disregarded by the court in making up the findings. (*Lagier* v. *Lagier,* 58 Mont. 267, 193 Pac. 393.)

The evidence disclosed that plaintiff and her husband lived [4] together in a house near the campus of the university, and that students in attendance at the institution visited and

frequented the same. Both plaintiff and her husband admitted that the latter used intoxicating liquor, and that he served the same to guests who visited his home. As to whether any of the guests were students the evidence is not definite, but there was uncontradicted evidence showing that students were permitted to bring their own liquor to the Ingersoll home and to drink it there, and the evidence tends to show that this was done on more than one occasion when plaintiff was present. After a students' dance held on December 4, which is referred to as the barristers' ball, a number of students, both boys and girls, went to the Ingersoll home, and at that time, according to information given the dean of women and by her reported to President Clapp, a girl came into the house who appeared to be under the influence of liquor. This evidence was based upon statements obtained from the plaintiff and her husband, and from statements of other persons made either to the dean of men or dean of women, and by them reported to President Clapp, all of which was so obtained and reported pursuant to requests made by the president in the performance of his duties.

The testimony further showed that, when the plaintiff was asked by the dean of women whether she had ever seen liquor served to students in her home, whether she would give the names of students who were in the habit of going to her home, whether she would give the names of students who were at her home on the night of the barristers' ball, she refused to give the information, and stated that her reason for doing so was because she did not "want the names of anybody else to be in trouble."

In addition to what is stated above, it appeared in the evidence that the plaintiff's conduct had not been called in question by the university authorities prior to the events under investigation; that she did not herself drink intoxicating liquor; and that her scholastic standing was high, her name being on the honor roll. There is nothing in this record in any way reflecting upon the plaintiff's character.

All of the facts above recited had been reported to President Clapp prior to December 19, and on that day there was a meeting of the deans' council concerning which the testimony shows that the plaintiff and her husband were present, and that President Clapp stated to them the substance of what is above recited, and concluded by saying: "In view of these facts, I am suspending you for the general good and reputation of the institution." It further appears that at this meeting the plaintiff and her husband had opportunity to make such statements as they desired, but that they did not attempt to refute or deny any of the above-recited charges.

In connection with this meeting, a suggestion had been made that Mr. Ingersoll had acquired the reputation of being the campus bootlegger, and a considerable amount of controversy seems to have taken place between President Clapp and the plaintiff and her husband on that subject, and there was likewise a considerable discussion between those present as to the amount of drinking which was indulged in by students at the university. President Clapp testified that, although he entertained a belief that Mr. Ingersoll was the campus bootlegger at the time he made the order suspending him and plaintiff from the university, he had subsequently ascertained that this belief was without foundation in fact.

The court made a finding "that the relatrix Janet T. Ingersoll was not given a formal hearing in which written charges were filed against her and in which she was permitted to meet face to face the witnesses against her and cross-examine the same." The main attack of counsel for plaintiff on the court's judgment is based upon the contention that under this finding no suspension of the plaintiff was authorized, it being their contention that she was entitled to a formal hearing upon the charges made against her; to be confronted with the witnesses who gave information against her, with the privilege of cross-examining them, and that she did not have an opportunity to call witnesses in her own behalf. This requires us to de-

termine just what is meant by a hearing in a matter such as this.

It certainly cannot be maintained that it means a hearing like that which constitutes the trial of a chancery suit, or like the examination of one who is charged with the commission of an offense against the law, for there is no power vested in the president of the university to compel the attendance of witnesses or to force them to testify if they were in attendance.

Counsel for plaintiff have cited in support of their contention *Commonwealth ex rel. Hill* v. *McCauley,* 3 Pa. Co. Ct. Rep. 77, and *Anthony* v. *Syracuse University,* 130 Misc. Rep. 249, 223 N. Y. Supp. 796. The first of the cited cases lays down the rule, as stated in the syllabus: "The student is entitled to notice of the charge preferred against him so that he may be able to prepare to meet it; and also to hear the proofs, with the full opportunity to question the witnesses and to call others to explain or contradict their testimony. Where it appears, upon the proper application of the student, that he had been dismissed without such hearing or trial, the court of common pleas will order his restoration by the writ of mandamus."

In 11 C. J., at page 998, it is said: "A college cannot dismiss a student except on a hearing in accordance with a lawful form of procedure, giving him notice of the charge and an opportunity to hear the testimony against him, to question witnesses, and to rebut the evidence." In support of this text *Commonwealth ex rel. Hill* v. *McCauley,* supra, and *Gleason* v. *University of Minnesota,* 104 Minn. 359, 116 N. W. 650, are cited as authority. A reading of the *Gleason Case* discloses that it has no application whatever to the rule announced in the text. In *Anthony* v. *Syracuse University,* supra, there was in question the validity of a rule of the university which reserved to it "the right, to require the withdrawal of any student at any time for any reason deemed sufficient to it, and no reason for requiring such withdrawal need be given." A student had been summarily dismissed without charges having

been made against her, and her request to be advised of the charges and for a hearing thereon had been denied. The court held the rule void, and directed that the student should be reinstated. In the course of the opinion the court quoted the language from 11 C. J. 998, which is above set forth.

These are the only authorities which have been called to our attention which hold that, before a student may be suspended from a college or university, it is necessary to hold a hearing attended with substantially the strictness and formality of a proceeding before a court, and they are based solely upon the language used in *Commonwealth ex rel. Hill* v. *McCauley,* above.

A great number of decisions are opposed to the rule laid down in the authorities above cited. In *Tanton* v. *McKenney,* 226 Mich. 245, 33 A. L. R. 1175, 197 N. W. 510, it appeared that a young woman, eighteen years of age, attended the State Normal College at Ypsilanti during the fall term of 1921 and the winter term of 1922, and was refused re-admission for the spring term of 1923. The refusal was based on an investigation of plaintiff's conduct made by the dean of women of the institution, and approved by the president. Before taking the action, the dean called the plaintiff in, fully apprised her of the information which had come to her as dean of women, and gave her ample opportunity to explain her conduct. The plaintiff's counsel in the case contended that she had been expelled without a hearing, but the court held that the proceeding above recited was a sufficient hearing under the circumstances.

In *Smith* v. *Board of Education,* 182 Ill. App. 342, a student was expelled from high school because of disobedience of a rule forbidding membership in a high school fraternity. The expulsion was made without a formal hearing, and he claimed for that reason it was unlawful. In holding that no formal notice or hearing was necessary in such a case, the court said: "In order to carry out the powers and duties of school directors or board of education of high school districts, no form

of trial or hearing is prescribed. The powers are given, the duties are laid down and the board of education is authorized in a reasonable and parliamentary way to investigate charges of disobedience or misconduct, and to suspend or expel any whom they may find guilty of any violation of any of their reasonable and valid rules.''

In *Koblitz* v. *Western Reserve University*, 21 Ohio C. C. 144, it is said: ''Custom, again, has established a rule. That rule is so uniform that it has become a rule of law; and, if the plaintiff had a contract with the university, he agreed to abide by that rule of law, and that rule of law is this: That in determining whether a student has been guilty of improper conduct that will tend to demoralize the school, it is not necessary that the professors should go through the formality of a trial. They should give the student whose conduct is being investigated, every fair opportunity of showing his innocence. They should be careful in receiving evidence against him; they should weigh it; determine whether it comes from a source freighted with prejudice; determine the likelihood, by all surrounding circumstances, as to who is right, and then act upon it as jurors, with calmness, consideration and fair minds. When they have done this and reached a conclusion, they have done all that the law requires of them to do.''

Upon a consideration of the foregoing authorities we are impelled to the conclusion that to hold to the rule laid down in *Commonwealth ex rel. Hill* v. *McCauley,* and seemingly approved in *Anthony* v. *Syracuse University,* would lead to a wholly impractical and unworkable situation. As above pointed out, the president of the university has no authority to compel the attendance of witnesses at a hearing or to compel them to testify if they were present. To hold that the power of suspension could only be exercised after a hearing had been held such as is indicated in the cases last referred to, would be to hold that the power was practically ineffective, except where witnesses voluntarily attended and testified. Such a rule would be destructive of the power vested in the

president. When the plaintiff was called before the deans' council on January 19, informed of the charges made against her, given opportunity to deny the same, and make a statement in connection therewith, of which privileges she did not avail herself, she was accorded a sufficient hearing. If at that time she denied the charges made, demanded proof thereof, asked to be permitted to produce witnesses in her own behalf, and these requests had been denied, a different question would be presented.

In the absence of statutory provisions or regulations adopted [5] by a lawful governing body, the method to be pursued in determining the necessity for the suspension of a student from the university rests with the one who is charged with its immediate direction and management, i. e., the president, and the courts will not interfere therewith, in the absence of a clear showing that he has acted arbitrarily or has abused the authority vested in him.

That the courts will not interfere with the discretion of school officials in matters which the law has conferred to their judgment, unless there is a clear abuse of that discretion, or arbitrary or unlawful action, seems to be the unanimous holding of the authorities, some of which are *John B. Stetson University* v. *Hunt,* 88 Fla. 510, 102 South. 637; *Woods* v. *Simpson,* 146 Md. 547, 39 A. L. R. 1016, 126 Atl. 882; *Kentucky Military Institute* v. *Bramblet,* 158 Ky. 205, 164 S. W. 808; 11 C. J., p. 997, sec. 31; 24 R. C. L., p. 575, sec. 24.

It is charged by counsel for plaintiff that no grounds for [6] her suspension were shown to exist, and she was not responsible for the acts committed by her husband in their house. Unfortunately for plaintiff, it appears that she was present in person at least on some occasions when the objectionable acts were committed, and was cognizant of others, and, so far as disclosed, never objected to or made any protest against the same. She and her husband maintained this home jointly. The facts, undenied by plaintiff, that her husband, himself a student, drank intoxicating liquor, and served it to his guests

in the Ingersoll home, and that students were permitted to bring intoxicating liquor there, and drink it with plaintiff's knowledge, and without her protest, alone preclude us from saying the president's action was arbitrary or unwarranted. President Clapp stated in effect that, so long as plaintiff and her husband occupied the house together in which the objectionable transactions were taking place, it was not practical to suspend one and not the other, because they could continue to conduct the house together, and thereby continue what was considered to be a wrong influence on the campus. He deemed it essential that the Ingersoll home as thus maintained and conducted be abated for the welfare of the student body. The wisdom or unwisdom of this conclusion is not for us to consider. The enforcement of the disciplinary rules of the State University is committed to the officials thereof, and not to the courts. As stated in 11 C. J. 997.: "Within reasonable limits, the powers of the trustees, regents, or other governing officers as to these matters is plenary and complete; and unless such rules and regulations are found to be unauthorized, against common right, or palpably unreasonable, the courts will not annul or revise them. Neither will the courts afford relief in case of the enforcement of such rules, unless those whose duty it is to enforce them act arbitrarily and for fraudulent purposes." And in *Woods* v. *Simpson,* supra, it is said: "The maintenance of discipline and the upkeep of the necessary tone and standards of behavior in a body of students in a college is committed to its faculty and officers, and not to the courts, which will not interfere unless the college officials have exceeded their discretion or acted arbitrarily."

Amongst the court's findings is one to the effect that in [7] suspending the plaintiff from the State University, and in sustaining the suspension, none of the defendants acted arbitrarily or without cause, and that such suspension was not due to any prejudice or personal feeling against the plaintiff or her husband, but that the defendants were acting in the exercise of an honest discretion as to what they believed to be

218      State ex rel. Ingersoll *v.* Clapp et al.     [Dec. T. '27

[81 Mont. 200.]

for the best interests of the university. The trial judge had the superior advantage of seeing the witnesses upon the stand, hearing them testify, and observing their manner while doing so, and his findings will not be disturbed by this court, unless the evidence clearly preponderates against them. (*Steiner* v. *McMillan,* 59 Mont. 30, 195 Pac. 836; *Croft* v. *Bain,* 49 Mont. 484, 143 Pac. 960.) All the testimony introduced at the trial has been fully considered, and we cannot say that it preponderates against the above finding.

From a review of the record in this case, we cannot say that the court's findings are not supported by the evidence, or that the conclusions drawn therefrom are erroneous. There is no error in the record which would warrant a reversal of the judgment, and it is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway. and Associate Justices Myers and Matthews concur.

MR. JUSTICE GALEN, Dissenting:

I dissent. Upon the record before us I think the writ should have issued. The relatrix was at least entitled to a hearing in accordance with her repeated demands. The deans' council and the president of the university acted arbitrarily in her expulsion, based upon prejudices resulting from rumors afloat to the effect that her husband was "the campus bootlegger," which gossip was admittedly baseless. Her plea to the chancellor of the University of Montana and to the state board of education for a hearing was unavailing. As a citizen of the state, she had an inherent right to avail herself of the privileges and benefits of the educational advantages afforded her by the state at the university by it established and maintained at public expense. Her case appears to have been prejudiced on the rankest kind of hearsay evidence, and it was by the president and deans' council determined to call her in and dismiss her, unless she were able to convince the president

and the deans that they were wrong. Two days later she was called before the president and the deans' council. She had not theretofore had any conversation with the president concerning the charges against her, or otherwise. However, he thereupon announced to the relatrix his decision to suspend her. The president stated that the Ingersolls "had gained the reputation of being the campus bootleggers; that perhaps was substantiated by the fact that Mr. Ingersoll had been convicted on a liquor charge in Helena a year previous to that." At the trial, however, the president frankly admitted he was in error as to the facts. He testified: "Faculty members did speak to me that they had positive evidence that Mr. Ingersoll was selling liquor to students, and that, however, on further examination, we did not feel positive of it. * * * As far as I am concerned, I am convinced in my own mind that Mr. Ingersoll did not sell liquor to students."

The State University is a public institution, and its officers are public servants, and in dealing with pupils regularly enrolled they should be just and fair in their decisions respecting students' rights. Arbitrary action is un-American on any theory. At least, the relatrix was entitled to have been accorded a hearing. As said in the majority opinion, there is nothing to reflect upon the moral character of relatrix; her grades were excellent and she stood high on the honor roll. She does not drink intoxicating liquor, never served any such, and knew nothing of students having been served with intoxicating liquors in her home. She should not be condemned because of suspicions directed against her husband in consequence of campus gossip. When, as here, "a student demands to know the reason why, thereby challenging the existence of any grounds for the claim that he has failed to safeguard 'ideals of scholarship' and 'moral atmosphere' of the institution, and asks * * * an opportunity to state his side of the case, if there be a case against him, before he is deprived of valuable rights, that student is entitled to the elementary right

of notice and opportunity to be heard." (*Anthony* v. *Syracuse University*, 130 Misc. Rep. 249, 223 N. Y. Supp. 796.)

As was well said in the case above cited: "The position taken by the defendant is fraught with such obvious perils that it seems unnecessary to recite them; but what a field of rumor, for malice, for prejudice, for falsehood, to roam in, leading to conduct on the part of the university which might be entirely honest, but at the same time based upon a total lack or misapprehension of facts."

A case of this character should never be before the courts, and would not therein be given serious consideration were administrative officers disposed to perform their simple duty in the premises. Their determination made on facts presented ordinarily should never be disturbed by the courts; but where, as here, they act arbitrarily, it presents a proper case for judicial interference.

The relatrix appears to have possessed the required qualifications and to have regularly enrolled and been regularly accepted as a student of the university. Subsequently her conduct was such that she was placed on the honor roll. A contractual relation was created, and she could not be arbitrarily denied her right to attend the university as a student. I concede the necessity and propriety of maintaining discipline at such an institution, and that, generally speaking, the courts will not interfere with the judgment and discretion lodged with administrative officers in its proper conduct. But where, as here, the student is arbitrarily expelled, without being accorded a hearing after repeated demands made therefor, a proper case is presented for court action. The courts are loath to interfere with the judgment and discretion necessarily vested in the governing body of a college or university; yet they will unhesitatingly intervene to prevent arbitrary action or unjust discrimination as to individual students.

The relation between the university and a matriculated student is in nature contractual, and the law will protect the

latter from arbitrary dismissal. (*Goldstein* v. *New York University*, 76 App. Div. 80, 78 N. Y. Supp. 739.)

"One who is admitted to a college has a contract right to be permitted to continue as a student until he in regular course attains the diploma and degree which he seeks, and which the institution is authorized to confer, and he cannot be arbitrarily dismissed.  *  *  *  While admitted students are at liberty to terminate all relations at any time, it does not follow that the college or university has the same right. In fact, when one is admitted to a college, there is an implied understanding that he shall not be arbitrarily dismissed therefrom.  *  *  *  It is clear that the fees for the first year are, in fact, paid and received with the understanding that the work of the year will not be made fruitless, a graduation and degree made impossible, by an arbitrary refusal to permit further attendance. In this understanding there is no want of mutuality. There is no want of good and valuable consideration.  *  *  *  An action for breach of contract is not an adequate remedy for such wrongful expulsion depriving the student of the opportunity of obtaining a diploma and degree to which, under his contract, he is entitled, and mandamus will lie to compel his reinstatement." (27 R. C. L. 144.)

The relatrix should not have been suspended without a hearing, and is therefore entitled to reinstatement. (11 C. J. 998.)

In this case it is my opinion that the record clearly discloses that the action of the president of the university and of the deans' council in dismissing the relatrix was arbitrary.

Rehearing denied January 18, 1928.


Cause taken to the supreme court of the United States March 7, 1928, on writ of error.