THE STATE OF MONTANA ON THE RELATION OF JAMES C. BART-
LETT, PETITIONER, v. ROBERT T. PANTZER ET AL., RE-
SPONDENT.

No. 12142.
Decided October 7, 1971.
489 P.2d 375.

MR. JUSTICE HASWELL did not participate.

John C. Sheehy, Billings, argued, for appellant.

William F. Crowley, Missoula, argued, for respondents.

PER CURIAM:

This is an original proceeding seeking a writ of mandate.

James C. Bartlett (hereafter "Relator") is a married, 22 year old citizen and resident of Montana, who brings this original proceeding in this Court to obtain a writ of mandate directed to the respondents to admit him to the beginning law class 1971 in the Law School of the University of Montana, at Missoula.

Respondents are respectively the President of the University of Montana, the Registrar of that unit, and the Dean of the Law School at that institution. Respondents are referred to hereafter as "Law School". Such reference includes the respondents, their agents and employees, in connection with their duties as administrative officers of the School of Law and of the University of Montana.

An Alternative Writ of Mandate has issued out of this Court, directing the Law School to admit Relator to registration and enrollment in the Law School in the school term beginning September 1971 or in the alternative to show cause why it has not done so.

No challenge is made to this Court assuming original jurisdiction, nor to the type of action, nor pertinent facts presented.

Upon hearing and from the record it appears that Relator is a high school graduate of Whitefish High School, Flathead County, Montana. He is a college graduate of the University of Chicago at Chicago, Illinois. He holds a Bachelor of Arts degree with concentration in Political Science, granted in June 1971.

Relator made application to the University of Montana for admission to the School of Law on or about December 20, 1970, tendering therewith a preregistration fee of $20.00, a copy of his Law School Admission Test scores, and a transcript of his grades from the University of Chicago.

Law School acknowledged in writing his application, his

preregistration fee, and his LSAT scores and transcript on January 13, 1971. In that letter he was advised:

"Your transcript indicates to us that you have not taken units in financial accounting and that you have not had an advanced English Composition course. I refer you to pages 10 and 11 of the Law School Catalog. On page 10 it is stated that an applicant must have an advanced English Composition course or must take a challenge examination administered by the Law School. On page 11, the catalog states that, 'College credit in the principles of financial accounting also is required for admission."

Relator has satisfied the English Composition requirement, and all other requirements for admission to the satisfaction of Law School, but dispute arose between Law School and Relator with respect to whether he satisfied the financial accounting requirement.

. To satisfy the accounting requirement, set out on page 11 of the Law School Bulletin, Relator offered to enroll at the University of Chicago in the spring quarter in a graduate accounting course offered at that institution entitled "Business 310— Managerial Accounting". Law School stated its willingness to accept such course by letter of January 28, 1971, stating:

"We are also willing to accept in satisfaction of our accounting requirement the accounting course offered in the Graduate School of Business. If you complete that course in the spring *with a satisfactory grade,* we will consider that requirement as fulfilled." (Emphasis supplied.)

Relator did enroll in said Graduate School accounting course, completed the same, and earned in the course "college credit in the principles of financial accounting" with a grade of "D".

Relator graduated from the University of Chicago in June 1971, with a sufficient grade point index, including the grade "D" received by him in the graduate accounting course "Business 310—Managerial Accounting."

At the University of Chicago, a "D" grade is sufficient to earn college credit; at the University of Montana, in the Law School, and in other schools and departments of the University of Montana, a "D" is a passing grade for courses taken at said University, though in some schools at said University unit a grade "C" or better is required for graduates in their major concentration. Relator's major at the University of Chicago was in Political Science. In fact, in Law School, a degree of Juris Doctor will be granted if the student has completed 90 semesters of law with a grade point index of 2.0 (a "C" average) all in law courses for which the student has registered and received a grade, among other requirements.

Relator, at the time of his first application, received from Law School a publication entitled "University of Montana Bulletin—Law School Issue." The provisions with respect to the English requirement and the financial accounting requirement appear on pages 10 and 11 of the bulletin. The specific language states:

"Applicants with undergraduate degrees from the University of Montana must have taken English 450 (Advanced English Composition) and received a grade of C or better. Applicants having degrees from other institutions must have an equivalent course or must achieve a satisfactory score on an examination required by the Law School in the proficient use of English. An applicant who fails the examination may be admitted on probation, but must take English 450 during the first semester of Law School and achieve a grade C or better as a condition to being permitted to register for the second semester. The Law School faculty reserves the right to require any student to take further work and study in English composition at any time that he evidences a deficiency.

"College credit in the principles of financial accounting also is required for admission. Normally, two quarters or two semesters of accounting are necessary to fulfill this requirement."

On April 16, 1971, Law School wrote to Relator advising him of his acceptance for admission and again referring to page 11

of the Law School Bulletin for the accounting requirement. That letter stated in part:

"* * * I am pleased to inform you that you are accepted for admission as a regular law student for the fall semester which commences on September 20, provided you have been awarded your college degree prior to matriculation in the Law School. It will also be necessary for you to satisfy the Law School's accounting requirement. *I refer you to page 11 of the Law School Bulletin for details concerning this requirement.* You must provide us with evidence of compliance with this requirement by June 15, 1971. If you have not established by that time that you have complied, your acceptance will be revoked, and another applicant will be offered your position in the class." (Emphasis supplied.)

Note that at no time, by bulletin, letter, or otherwise, has Law School explicitly stated to Relator that his accounting requirement is anything more than "college credit" earned by him, except the reference in the letter of January 28 to a "satisfactory grade."

The deadline established by Law School in its letter of April 16, was June 15, 1971, for the satisfaction of the accounting requirement. Since Relator would be still in school at the University of Chicago until late June, and it would be impossible to get a transcript in time for the deadline, Relator went to the registrar of the University of Chicago, Albert M. Hayes. Thereupon Mr. Hayes wrote a letter to Law School, dated June 11, 1971, setting forth the grades earned by Relator for the spring quarter then ending. Those grades included an "A" and a "B" in two other courses, and a "D" in Business 310—Managerial Accounting. Thus Law School was notified on or about June 11, 1971, of the grade received by Relator in the graduate accounting course.

Relator had already paid $20.00 as a preregistration fee. On June 8, 1971, prior to receipt of the grades, the Law School sought an additional "registration deposit" of $100.00 to be applied against his fees, and to be kept by Law School if he did

not register. The additional fee was accepted by Law School through the Business Office at the University of Montana, and has been retained by it.

On or shortly prior to July 20, 1971, Law School advised Relator he would not be admitted to the School of Law in September 1971, on the ground that he had not completed the accounting requirement, specifically that the grade of ''D'' was not a ''satisfactory'' grade.

It was then too late for Relator to enroll in any summer course in any institution to repeat the purported accounting requirement. He appealed the decision to Law School, and provided letters and correspondence to Law School from the University of Chicago, including one letter from David F. Drake, Professorial Lecturer, and one from Sidney Davidson, Dean of the Graduate School of Business at the University of Chicago, and Arthur Young, Professor of Accounting at that institution.

The graduate accounting course taken by Relator at the University of Chicago was an advanced course of study, beyond what would be taught in a beginning course in financial accounting at any college or university, including the University of Montana. The University of Chicago is a recognized institution with respect to its Graduate School of Business and the courses offered therein including ''Business 310—Managerial Accounting,'' are of high quality and content.

Nevertheless, Law School refused Relator's appeal by notifying him in writing on September 1, 1971, that it would not accept him as a matriculating student in the September 1971 law school class for beginning law students.

The accounting requirement is a new requirement for admission to Law School. Consequently there are presently students in the Law School who were admitted without completing such requirement. The University of Montana is offering an academic course ''Accounting for Lawyers'' during fall quarter 1971 for Law School students, but Law School has restricted such accounting course to second year Law School students. Successful completion of the academic course ''Accounting for

Lawyers'' would fulfill the accounting requirement (there is no present written requirement that Law School students must achieve a ''C'' grade or better in ''Accounting for Lawyers''). Relator was advised by Law School that it would consider enrolling him in ''Accounting for Lawyers'' in the 1971 fall quarter for the accounting requirement. However, Law School refused to allow Relator to enroll both in Law School and ''Accounting for Lawyers,'' though second year students in Law School are so allowed to enroll in both. Moreover, Law School now allows students who are deficient in the English composition requirement to enroll in an English course in the fall quarter and they are given probationary enrollment in Law School at the same time.

At the present time, therefore, there are second year law students who are taking ''Accounting for Lawyers'' to fulfill their accounting requirement, but Relator is refused admission to that class as a law student. There are Law School students taking additional courses in English to correct an English deficiency, and they are allowed probationary registration in Law School, but Relator is not accorded this opportunity with respect to accounting.

In the answer and return of Law School, we are told that five others were refused admission for lack of accounting requirement, including one who received a ''D'' grade. We are further informed of the crowded condition of the Law School (although the freshman class is less than the maximum number allowed), its large number of applications, its high standards for admission and other matters.

Relator poses several problems including lack of Board of Regents authority. However, we shall not consider these matters, nor shall we consider matters as to exhaustion of administrative remedies. Rather, we shall approach the problem on the rule of law stated in State ex rel. Ingersoll v. Clapp, 81 Mont. 200, 216, 263 P. 433, thusly:

''That the courts will not interfere with the discretion of school officials in matters which the law has conferred to their

judgment, unless there is a clear abuse of that discretion, or arbitrary or unlawful action, seems to be the unanimous holding of the authorities   *   *   *."

Admittedly this is an "admission case" and *Ingersoll* was not. Law School urges the rule of judicial nonintervention as stated in Connelly v. University of Vermont and State Agr. College, D.C., 244 F.Supp. 156, 160, which was cited and relied upon in Wong v. Regents of University of California, 15 Cal.App.3d 823, 93 Cal.Rptr. 502. The United States District Court in *Connelly* said:

"The rule of judicial nonintervention in scholastic affairs is particularly applicable in the case of a medical school. A medical school must be the judge of the qualifications of its students to be granted a degree   *   *   *.   Whether the plaintiff should or should not have received a passing grade for the period in question is a matter wholly within the jurisdiction of the school authorities, who alone are qualified to make such a determination   *   *   *."

We approve generally of "judicial nonintervention" in admissions cases and look to whether or not there has been a clear abuse of discretion or arbitrary action. In using the terms "abuse of discretion" or "arbitrary action," we are using them in their legal sense and not in any personal vein.

From the answer and return of Law School, we are brought to the matter of discretion exercised in the refusal to admit. Relator. That discretion hinged strictly on the interpretation of the words "satisfactory grade." Nowhere in its catalog, by letter, or otherwise, does Law School indicate what is meant by "satisfactory" grade. Is it a credit earning grade? A grade of "C" or better?

By affidavit of one Jack L. Hoover, Director of Admissions, we are told that in common terminology and in that used professionally at the University of Montana and colleges and universities generally, the grade of "D" is not deemed "satisfactory" but rather is "acceptable." We need not discuss various definitions of the words "satisfactory" and "acceptable";

but remark that *if* their significance is so paramount as to hinge a decision on, as in this case, their significance is important enough to warrant explanation in some form, either by letter, publication, or some other medium of communication.

Counsel for Law School states the catalog is only for "general" information, yet the Assistant Dean referred Relator to that catalog for "details." No one of common understanding, if the members of this Court are of common understanding, would take the exchange of correspondence here to indicate anything other than a "satisfactory" grade is a credit earning grade.

Thus, we look to the matter of judgment or "discretion" in the legal sense. To cause a young man, who is otherwise qualified and whose entry into Law School would not interfere with the educational process in any discernible fashion, to lose a year and an opportunity for education on the technical, unpublished distinction between the words "satisfactory" and "acceptable" as applied to a credit earning grade from a recognized institution is, in our view, an abuse of discretion such as to cause us to look beyond the rule of judicial nonintervention.

For these reasons, the Writ of Mandamus is ordered to be issued.

What we have heretofore stated is not to be taken as establishing a formula which would require the Law School to admit other applicants whose situation may be somewhat similar and we still accept the principle that the Law School is the judge of admission standards for all applicants.

In view of the circumstances present here all parties shall bear their own costs.

MR. JUSTICE HASWELL, deeming himself disqualified, did not participate in the foregoing Opinion.