Richard M. Rosenbaum, J.
Plaintiff brings a motion for an injunction pendente lite in connection with his action for a permanent injunction and other relief. The plaintiff’s action is to enjoin the defendant, the Director of the Rochester State Hospital, Russell Barton, M.D. from denying the plaintiff, Gary Spatol, certain privileges granted students attending Rochester State Hospital School of Nursing. Plaintiff also brings an action for a declaratory judgment and damages. On January 3, 1972 the plaintiff received a letter from the office of the defendant suspending him from the school of nursing wherein he is a regularly enrolled student. On January 7, 1972 the suspension was lifted insofar as the plaintiff’s studies are concerned but he was denied certain privileges, such as the use of the cafeteria and rooming on the campus and he says he is being denied the right to freely associate with people at the school. The plaintiff claims his constitutional rights have been violated in that the Fourteenth Amendment to the Constitution of the United States guarantees that before the plaintiff can be suspended from a State school he must be given a hearing before an impartial board and certain procedures must be followed in order to satisfy the requirements of due process including the right to present his own defense, the right to produce either oral testimony or written affidavits of witnesses on his behalf; the opportunity to be represented by counsel and to cross-examine witnesses; the right to a decision based on substantial evidence; and if found guilty of the charges, punishment if any, within the recognized limits of discretion.
It has been said that what is required to meet procedural due process under the Fourteenth Amendment is controlled by the circumstances of each case. (Barker v. Hardway, 283 F. Supp. 228 [1968].)
The defendant states through counsel’s affidavit that it is true that there has been no hearing but the plaintiff received a written list of the charges against him on or about January 14, 1972 and he was thereby advised that he may file an answer to the charges and that he is entitled to a hearing at which he may present witnesses and other proof and may be represented by an attorney. According to the defendant’s answer the hearing is to be held during the month of February at the convenience of all the parties involved.
*37 The only issue before this court is whether or not under all the circumstances the plaintiff is entitled to a preliminary injunction. In order to decide that, the court must consider whether or not the defendant is doing something to the plaintiff or is about to do something to the plaintiff that would injure the plaintiff irreparably. (CPLB 6301.) The plaintiff offers no proof that he is suffering irreparable injury from the limitations imposed by the defendant, even though they have been imposed without a prior hearing. What constitutes an irreparable injury to one person may be a mere inconvenience to another. In determining the answer to this question the court must consider such questions as, do the temporary restrictions amount to a loss of substantial rights for this plaintiff? Were there compelling circumstances present for these restrictions to be imposed before a hearing was had?
Certainly the courts must strike a balance between student liberties and discipline, orderliness and safety of students and for that matter, in this case, safety of patients at a teaching hospital. An examination of the charges made against the plaintiff in this instance renders assistance in answering the afore-mentioned questions. The first charge is that the plaintiff failed to complete an assignment on time. The second charge is the conclusion that the student does not accept constructive criticism. The third charge is that the student lacks emotional stability and maturity. The fourth charge is that plaintiff is persistently argumentative and disruptive and has “ a problem with anyone in authority ”. The fifth charge is that the plaintiff was tardy five times in the past year. The sixth charge is that the plaintiff sought permission to occupy his room when it was closed. The seventh charge is that the plaintiff broke the school rules by visiting a girl in her room and refused to leave when requested to do so. Also that the plaintiff had a girl in a room in the all-male dormitory against the rules and created a disturbance. Also that the plaintiff created a disturbance in another dormitory which required safety officers to escort him from the premises. The eighth charge is that the plaintiff was abusive and unco-operative in that, among other things, he called the school principal at her house on a Sunday at 10:45 p.m. to question curfew rules for female students. The ninth charge is misconduct in failing to report for a conference. The tenth charge is misconduct in failing to attend class with no excuse. *38 Defendant’s counsel claims that a preliminary hearing was afforded the plaintiff in connection with charge seven and the plaintiff was notified and appeared at said hearing. Apparently there was no hearing as to the other charges, or if there was, it was more of a listening than a hearing, as far as the plaintiff was concerned. The defendant raises the fact that there was a hearing for the first time in his memorandum of law. This court does not feel that there was a hearing as such. Conspicuous by its absence from the plaintiff’s affidavit supporting his order to show cause and from his verified complaint are allegations denying defendant’s charges.
Many courts have held that even where students are expelled from school they were not entitled to confrontation with witnesses who accuse them, and were not entitled to cross-examine them. (State ex rel. Sherman v. Hyman, 180 Tenn. 99, cert. den. 319 U. S. 748; State ex rel. Ingersoll v. Clapp, 81 Mont. 200, cert. den. 277 U. S. 591; People ex rel. Bluett v. Board of Trustees, etc., 10 Ill. App. 2d 207.) In the Sherman, case it was also held that the due process clause of the Constitution can have no application where the governing board of a school is rightfully exercising its inherent authority to discipline a student. However, there are numerous cases to the contrary. In the case of Dehaan v. Brandeis Univ. (150 F. Supp. 626) the court noted that Massachusetts statutes and decisions have strictly limited the hearing requirements to public schools and that even in cases involving dismissal from public schools no hearing is necessary where the exclusion was for reasons other than misconduct. In the instant case we are talking about misconduct but not dismissal.
In sum it seems to this court that while the defendant has notified the plaintiff of the charges against him, some of which if accurate would warrant disciplinary action, and promised him a hearing, the scope of which appears to contemplate maximum standards of administrative due process far beyond what courts have required in the past, no hearing has actually been held. Procedural due process which State college students must be afforded before they can be validly suspended is not the saíne formal court type of judicial hearing that is required in criminal cases. (Esteban v. Central Mo. State Coll., 277 F. Supp. 649 [1967].) On the other hand, the plaintiff has not been suspended or expelled. Only certain privileges have been suspended and the plaintiff has not shown in any of his papers that the *39 suspension of these privileges has irreparably injured him nor do they threaten to.
Accordingly, while this court feels that there may be certain instances where it would be better practice to afford the plaintiff a hearing prior to suspension of privileges, the court realizes that governing boards and administrative officials of universities, either public or private, have a responsibility to protect all of the members of the student body and to try to keep to a minimum disruption of and interference with the learning process, not to mention that where a hospital is concerned the patients’ well-being is also a paramount consideration. It is imperative that students charged and threatened with suspension or other school disciplinary action get an opportunity to present their version of the case and to make such showing as they desire to the person or group of persons who have the authorized responsibility of determining the facts of the ease and the nature of the action, if any, to be taken. (Esteban v. Central Mo. State Coll., supra.)
It would be too much to require a hearing in advance, the type of which is contemplated by the plaintiff here every time the administration felt it necessary to impose disciplinary measures for misconduct. (General Order on Judicial Stds. of Procedure and Substance, 45 F. R. D. 133, 142 [W. D. Mo., 1968].) In the case of Barker v. Hardway (283 F. Supp. 228, supra) the court held that the power of the president of a State college to oversee, to formulate rules and regulations and to rule is a necessary element in order to provide and promote education. The court went on to say that the State college officials have inherent general power to maintain order and to exclude those who are detrimental to the student body and the institution’s well-being, so long as they exercise sound discretion and do not act arbitrarily or capriciously. In the Barker v. Hardway case the court expressed the view that the judiciary must exercise restraint in questioning the wisdom of specific rules of conduct promulgated by State colleges or the manner of application, since such matters are ordinarily the prerogative of school administrators rather than the courts.
Depriving a student of the use of certain facilities for approximately one month for living in the men’s dormitory without registering or paying fees, contrary to the rules of the State college was held to be within the discretionary authority of the administrators. (Barker v. Hardway, supra.) The same court also stated that First Amendment rights are not a license to *40 trample upon the rights of others but must be exercised responsibly and without depriving others of their rights.
Accordingly, the plaintiff’s motion for an injunction pendente lite is denied without prejudice to its renewal unless the plaintiff is granted a hearing in accordance with the defendant’s letter to the plaintiff dated January 14, 1972 hereinbefore referred to. Such hearing should be conducted during the month of February, 1972.